**CONTECH STORMWATER SOLUTIONS, INC.**

v.

**BAYSAVER TECHNOLOGIES, INC., and Accubid Excavation, Inc.**

**Civil Action No. CCB–07–358.**

United States District Court, D. Maryland.

Jan. 15, 2008.

---

618

C. Dennis Southard, IV, Thompson Hine LLP, Washington, DC, Jeffrey Cooper Metzcar, Thompson Hine LLP, Dayton, OH, Stephen Joseph Butler, Thompson Hine LLP, Cincinnati, OH, for Contech Stormwater Solutions Inc.

Joseph J. Zito, Zito TLP, Washington, DC, for Baysaver Technologies, Inc., and Accubid Excavation, Inc.

### MEMORANDUM

CATHERINE C. BLAKE, District Judge.

Now pending before the court is a motion for summary judgment filed by plaintiff Contech Stormwater Solutions, Inc. ("Contech") against defendants BaySaver Technologies, Inc. ("BaySaver") and AccuBid Excavation, Inc. ("AccuBid"). Having already granted the defendants' motion for summary judgment on Contech's infringement claim, the court must now consider the defendants' counterclaims asserting business tort theories and patent invalidity as to Contech's United States Patent Nos. 5,707,527 (the "'527 patent"), entitled "Apparatus and Method for Treating Stormwater," and 6,027,639 (the "'639 patent"), entitled "Self–Cleaning Siphon–Actuated Radial Flow Filter Basket." Contech filed this motion on October 12, 2007 seeking summary judgment on all counterclaims asserted by BaySaver and AccuBid. The issues in this case have been fully briefed and no oral hearing is necessary. For the reasons stated below, Contech's motion will be granted.[1]

### BACKGROUND

Contech's complaint involved the possible infringement of patents that grant Contech rights to a specific storm water filtration method and apparatus. The court previously granted BaySaver's and AccuBid's motion for summary judgment on the infringement claim, finding that the BayFilter, the accused device, did not literally infringe the '527 and '639 patents as construed by the court. *Contech Stormwater Solutions v. Baysaver Techs. Inc.,* 2007 WL 2872074 (D.Md.2007). BaySaver's and AccuBid's still pending counterclaims assert that Contech's patents are invalid and that Contech committed various business torts. More specifically, BaySaver and AccuBid argue that Contech's patents are invalid as either anticipated or obvious under 35 U.S.C. §§ 102 and 103;[2] invalid for failure to disclose the best mode in violation of 35 U.S.C. § 112; or unenforceable because Contech's predecessor failed in its duty of candor to the USPTO under 37 C.F.R. § 1.56 by failing to disclose known relevant prior art during the prosecution of the patents. Additionally, BaySaver and AccuBid assert that Contech defamed the defendants, tortiously interfered with contractual and prospective business relationships, and engaged in unfair competition.

In its motion, Contech asserts that, because the defendants failed to provide sufficient evidence to establish the *prima facie* elements of any of their counterclaims as of the close of discovery on September 28, 2007, it is entitled to summary judgment on all claims. Contech further suggests that, even if the court considers the defendants' late evidentiary submissions for the purpose of this summary judgment motion, those factual allegations are insufficient to establish the required elements of the defendants' counterclaims. This opinion will consider these arguments in turn.

### ANALYSIS

*Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-

---

1. To the extent any information filed under seal is referred to in this opinion it is hereby unsealed as necessary to explain the court's rulings in this case.

2. As Contech notes in its reply brief, it is still not entirely clear whether BaySaver and Ac-

cuBid are challenging the validity of the '527 and '639 patents under § 102 or under § 103. Although this lack of specificity is further evidence of the defendants' failure to provide the basis of their invalidity claim, the court's analysis here would reach the same result under either theory.

ment: shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)); *see also SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1334 (Fed. Cir.1999). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir.2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*,

477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### I. *Rule 37(c)(1)*

Federal Rules of Civil Procedure 26(a)(1) requires that a party must, without awaiting a discovery request, provide the other parties: (A) the identity of potential witnesses and the purpose for which they may be called, and (B) a copy of all documents that the disclosing party may use to support its claims. Rule 26(e)(1) further provides that a party has a duty to supplement its initial disclosures and answers to interrogatories when previous disclosures are incorrect or incomplete. When a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 37(c)(1). Thus, Rule 37(c)(1) could prevent a non-moving party in a summary judgment proceeding from offering evidence to support its claims when that party has previously failed to meet its disclosure and duty to supplement requirements. Excluding evidence as a sanction for non-disclosure, even in the absence of bad faith, supports what the Fourth Circuit has identified as the "basic purpose" of Rule 37(c)(1), which is to prevent surprise and prejudice to the opposing party. *Southern States Rack and Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 596 (4th Cir.2003).

 As previously noted, in order to defeat summary judgment, a non-moving party must provide specific factual support for every element of a claim. *See Bouchat*, 346 F.3d at 526. Evidence offered to rebut a summary judgment motion may be excluded under Rule 37(c)(1), however, if the non-moving party has failed to provide the opposing party with proper disclosures

and supplements as required by Rule 26(a) and (e). *See Southern States,* 318 F.3d at 596; *MicroStrategy Inc. v. Business Objects,* 429 F.3d 1344, 1356–57 (Fed.Cir. 2005) (upholding a district court's exclusion of non-expert damages evidence on the grounds that the party failed to properly supplement discovery interrogatories as required under *Southern States).* The only exceptions to exclusion are when the nondisclosure is substantially justified or harmless. *Southern States,* 318 F.3d at 596–97. "[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* at 597.

█ Here, Contech argues that it is entitled to summary judgment on all of the defendants' counterclaims, contending that late evidentiary disclosures and failures to supplement interrogatories should lead to the exclusion of evidence. Contech asserts that "[d]espite numerous requests, Defendants have not identified under Rule 26(a), or elsewhere in discovery, information or fact or expert witnesses that would enable them to establish the elements of their counterclaims." (PL's Mem. at 4.) More specifically, Contech states that as to the patent counterclaims, the defendants' Rule 26(a) initial disclosures do not identify any prior art, documents, or individuals that would support or provide a basis for their claims. Contech alleges that despite its numerous informal attempts to obtain the requested information, BaySaver and AccuBid failed to supplement their initial disclosures or interrogatory responses and never submitted any expert reports. (*Id.* at 7.) According to Contech, it was not until after the close of discovery when, on October 1, 2007, it first received a summary of testing done on the Contech patents by Tom Pank, CEO of BaySaver. (PL's Reply Mem. at 18.) Furthermore, Contech alleges that it was not specifically notified as to which prior art patents defendants planned to use to prove invalidity until October 15, three days after Contech had filed this summary judgment motion, when Contech electronically received supplemental interrogatory responses.[3] Contech concludes that by failing to disclose the facts and theories supporting their patent law claims, BaySaver and AccuBid "have prevented Contech from preparing its defense through its own testing and through expert rebuttal," and therefore should not survive summary judgment. (*Id.* at 23.)

As for the business torts, Contech similarly argues that the defendants failed to provide any concrete evidence that the initial infringement lawsuit was objectively baseless or that Contech's conduct caused BaySaver and AccuBid any actual damages. (*Id.* at 8.) Contech notes that it only

---

3. Contech notes that the supplemental interrogatory responses included a certificate of service stating that the responses had been served on Contech on the deadline for the close of discovery, September 28, 2007. According to Contech, however, the responses were not in fact electronically served until October 15. The defendants' failure to respond to this contention or offer proof that the supplement was sent on September 28 leads the court to conclude that the September 28 date was erroneous. Even if the supplement were sent on September 28, this would be too late in the discovery process to prevent serious prejudice to Contech in drafting its dispositive motion, which was due on October 12, 2007, soon after the close of discovery.

received, for the first time, on November 12, 2007, the identity of an actual customer who may have been affected by Contech's communications. Contech's Reply on this summary judgment motion was due the next day. (*Id.* at 8–9.) Contech therefore argues that this late disclosure should be struck under Rule 37(c)(1), and that because the defendants never offered any other causation or damages evidence resulting from the alleged business torts, Contech is entitled to summary judgment.

In response, BaySaver and AccuBid argue that they identified potential witnesses in their Rule 26(a) initial disclosure and, despite the complexity of the patent infringement claims, were not required to provide an expert witness. (Def.'s Opp. Mem. at 2.) Furthermore, the defendants argue that they disclosed damages as early as February 2007 in the Pank affidavit attached to the TRO motion, even though the affidavit did not reveal the identity of the allegedly affected customer.[4] (Def.'s TRO Mem. at Ex. 1, Pank Affidavit.) Additionally, the defendants apparently suggest that Contech was on notice of the evidence found in any late disclosures or presently relied upon in their opposition brief, because all of the documents and evidence currently offered were derived from or presented in the depositions of the defendants' proposed trial witnesses. (Def.'s Opp. Mem. at 4.) BaySaver and AccuBid state in conclusory fashion that there was therefore no harm or surprise to Contech, that the testimony relied upon in the opposition brief is extremely important, and that any late disclosures of evidence was justified. (*Id.*)

As a threshold matter, Contech has demonstrated that the defendants failed to satisfy their disclosure and supplementation obligations as required by the Federal Rules. As further explained below, because BaySaver and AccuBid failed timely to disclose prior art or the underlying basis for their invalidity claims, and because they failed to demonstrate causation and damages on their business tort claims, Contech is entitled to summary judgment.

██ This result follows from applying the *Southern States* factors in determining whether a court should strike undisclosed evidence. *See Southern States,* 318 F.3d at 597. First, it would constitute significant surprise and prejudice to Contech if it were now required to evaluate the tests conducted by Pank or the prior art that BaySaver and AccuBid now rely upon as a basis for the invalidity claims. Contech served interrogatories on BaySaver and AccuBid on May 17, 2007 in order to determine the basis of the counterclaims. The defendants' initial response failed to adequately provide notice of the basis of the claims, citing the need for additional discovery. Over the next four months the defendants, quite simply, failed to supplement their bare boned initial response in a timely fashion in order to permit Contech to formulate a proper defense.[5] In *MicroStrategy,* the Federal Circuit upheld

---

4. Not until November 12, 2007 did BaySaver and AccuBid finally reveal the identity of the client originally offered anonymously for the purposes of the TRO. Although apparently it was not until November when the client stated his willingness to testify, this does not forgive BaySaver's and AccuBid's failure to notify Contech of the specific basis of their damages claim until after the close of discovery and after dispositive motions briefing was almost complete.

5. To the extent that BaySaver and AccuBid rely on their 35 U.S.C. § 282 disclosure filed on October 29, 2007, the Fourth Circuit has noted that although the Federal Rules and § 282 coexist, "when the court has set and the parties have agreed to a discovery period, that procedure necessarily governs that trial." *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 551 (Fed.Cir.1998).

the exclusion of non-expert damages evidence when the offering party had failed to supplement discovery interrogatories, thereby preventing the opposing party from crafting a defense. 429 F.3d at 1356; *see also Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir.2005) (noting that a party that fails to provide required disclosures, in that case expert reports, "unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case"). A party is thus not required to plan a defense based on all possible documents or information presented during depositions, but rather must be adequately informed by the opposing party, in response to proper discovery requests, which facts, theories, and documents will likely be relied upon at trial.[6]

Second, Contech has noted that it would need to reopen discovery and procure expert testimony and reports in order to properly formulate a defense to BaySaver's and AccuBid's claims. This potential delay significantly impacts the third *Southern States* factor, as it would be disruptive to reopen discovery and allow the defendants to rely on their late submissions when trial is scheduled to begin this month and this current summary judgment motion is already under consideration.

Fourth, although the evidence is important to BaySaver's and AccuBid's case, it is equally important to Contech in formulating a defense. And finally, the defendants' explanation for their failure to disclose the underlying basis of their counterclaims is wholly inadequate. Similar to the situation in *MicroStrategy*, BaySaver and AccuBid were in possession of information well before the close of discovery that could have been used to supplement the initial interrogatory response in a timely manner and only the defendants are "to blame for creating this situation." 429 F.3d at 1357. It is important to note that the defendants could have, but did not, request an extension of the discovery deadlines when it became clear they could not meet those deadlines.[7] Therefore, because BaySaver's and AccuBid's failure to comply with the Federal Rules was neither substantially justified nor harmless, the untimely disclosures concerning the information and prior art now relied upon to support the invalidity counterclaims and the newly procured evidence concerning causation and damages in relation to the business tort claims will be struck under Rule 37(c)(1). Because BaySaver and AccuBid cannot factually support the elements of their claims without the late submissions, Con-

**6.** This is especially the case in a situation like this where, during the taking of the depositions in question, BaySaver and AccuBid made representations implying that the alleged prior art now relied upon to prove invalidity was possibly "irrelevant" to the case. (PL's Reply Mem. at 21, Ex. 3 Lenhart Dep. at 163–64.) Therefore, Contech cannot be said to have been on notice that the prior art being discussed during the depositions would serve as the underlying basis of the invalidity counterclaims.

**7.** The court recognizes it can be difficult (though certainly not impossible) to formulate an invalidity claim without having first received the court's claim construction on the underlying patent. The court issued its claim construction on the '527 and '639 patents on September 25, 2007. BaySaver and AccuBid, however, never moved for an extension of time before the close of discovery in order to consider their invalidity counterclaims in light of the claim construction. In fact, BaySaver and AccuBid have consistently insisted on a tight schedule, resulting in the April 27, 2007 Scheduling Order with a January 2008 trial date. (*See e.g.* Def.'s Time Ext. Opp. at 1–2.) BaySaver and AccuBid cannot have it both ways in requesting an expedited discovery schedule, but then seeking to go to trial without having formulated and substantiated their invalidity counterclaims and notified Contech accordingly.

tech is entitled to summary judgment on all counterclaims.

## II. *Sufficiency of Evidence Opposing Summary Judgment*

Even if the court considered all of the evidence BaySaver and AccuBid now rely upon, Contech would be entitled to summary judgment because the defendants have failed to substantiate their counterclaims with the required specificity. In their opposition brief, for example, Bay-Saver and AccuBid include significant portions of deposition testimony without explaining how the testimony helps to establish the required elements of their claims. The defendants additionally attach numerous exhibits, including alleged prior art and product testing reports, without explaining how this evidence can be used to prove the counterclaims. "A district court need not scour the record to make the case of a party who does nothing." *Tatalovich v. City of Superior,* 904 F.2d 1135, 1139 (7th Cir.1990). Because BaySaver and AccuBid fail to support essential elements of their counterclaims, they cannot prevail as a matter of law.

## A. *Patent Claims*

■■■ BaySaver and AccuBid assert two patent counterclaims, including patent invalidity and patent unenforceability for inequitable conduct. Although BaySaver and AccuBid do not clearly establish which patent invalidity theory they are pursuing, a patent claim may be deemed invalid in light of prior art either for anticipation under § 102 or obviousness under § 103.[8] "To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." *In re Schreiber,* 128 F.3d 1473, 1477 (Fed.Cir.1997). According to the single source rule, all the claim's limitations must be contained in a single reference, *see, e.g., Brown v. 3M,* 265 F.3d 1349, 1351 (Fed.Cir.2001), and the reference "must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by persons of ordinary skill in the field of the invention," *Crown Operations Int'l, Ltd. v. Solutia Inc.,* 289 F.3d 1367, 1375 (Fed.Cir.2002).

■■■ In addition to anticipation, a claim may be invalid for obviousness under § 103 when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." The Supreme Court has established that "[u]nder § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined." *KSR Int'l Co. v. Teleflex Inc.,* — U.S. ——, ——, 127 S.Ct. 1727, 1734, 167 L.Ed.2d 705 (2007) (quoting *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)). A finding of obviousness may not be based on "the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention." *Crown Operations,* 289 F.3d at 1376 (quoting *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 546 (Fed.Cir.1998)). Rather, "[t]here must be a teaching or suggestion within the prior art, within the nature of the

---

**8.** The court does note that BaySaver and AccuBid make references in later submissions suggesting they rely on an anticipation claim only. (*See* Def.'s § 282 Mem. at 2.) The choice of invalidity theory does not change the outcome of this summary judgment motion, however. For the sake of completeness, both theories will be discussed.

problem to be solved, or within the general knowledge of a person of ordinary skill in the field of the invention, to look to particular sources, to select particular elements, and to combine them as combined by the inventor." *Id.* Because under either the anticipation or obviousness theory a patent is presumed valid under 35 U.S.C. § 282, "[i]n order to overcome the presumption of validity, the party challenging a patent must prove facts supporting a determination of invalidity by clear and convincing evidence." *Apotex USA, Inc. v. Merck & Co., Inc.,* 254 F.3d 1031, 1036 (Fed.Cir. 2001).

 Here, under either invalidity theory, BaySaver and AccuBid have failed to point to specific facts that establish the required elements of the counterclaim. In attempting to meet their burden, the defendants summarily rely on: (a) the anticipated trial testimony of Tom Pank, James Lenhart, the co-inventor of the '527 and '639 patents, and Daniel Cobb, who has technical knowledge of the Contech filters; (b) numerous attached exhibits, which include alleged prior art and the Pank report; and (c) portions of deposition testimony elicited from Lenhart.[9] Without explaining how any of this evidence establishes the scope and meaning of the alleged prior art or how the Con-

tech patents, as construed by the court, are invalid in light of the prior art, Bay-Saver and AccuBid assert they have satisfied their burden. As previously noted, "[a] district court need not scour the record to make the case of a party," especially in the context of a complicated patent invalidity claim. *Tatalovich,* 904 F.2d at 1139; *see also Guarino v. Brookfield Township Trs.,* 980 F.2d 399, 406 (6th Cir.1992) (requiring the non-moving party "to do its own work, and to assist the trial court by responding to the motion, pointing out as specifically as is reasonably possible facts that might demonstrate the existence of genuine issues"). As Contech notes, the defendants do not "provide a claim chart or any reasoned analysis showing where in the prior art each element of each allegedly invalid claim is located. Defendants merely attached alleged prior art references to their Opposition without any explanation of why any claim of the asserted patents is invalid over the referenced prior art." (Pl.'s Reply Mem. at 27.) Without more, BaySaver and AccuBid have quite simply failed to produce "specific facts showing that there is a genuine issue for trial," especially under a clear and convincing standard. *Bouchat,* 346 F.3d at 525. Contech is therefore entitled to summary judgment on the invalidity claims.[10]

**9.** On November 27, 2007, BaySaver and AccuBid filed a second supplemental opposition to Contech's motion for summary judgment, attaching a complaint filed against Contech in the Northern District of Florida, a copy of a graduate design report, and a letter from Contech's counsel to the defendants' counsel disclosing the complaint and the report. The court does not see how this new information, without any explanation or analysis by defense counsel, helps to establish the counterclaims now at issue. The issues involved in the Northern District of Florida action will be properly litigated in that forum and not here.

**10.** In pursuing the patent invalidity claims, BaySaver and AccuBid appear to be focused

on generating an explicit ruling from the court that the Contech patents require the use of a siphon priming valve. In the defendants' § 282 statement of prior art, they list numerous sources of alleged prior art evidence, with no explanation or analysis, but then conclude that if the '527 and '639 patents are construed to include a water valve, "one or more of the above references are non-anticipatory." (Def.'s § 282 Mem. at 2.) Although indicating in the previous claim construction that the Contech patents likely require a siphon priming valve, the court was and still is not required to reach a final determination on the issue. BaySaver's and AccuBid's desire to get such a determination is not a basis for overcoming summary judgment.

BaySaver and AccuBid next argue that Contech's patents are invalid under 35 U.S.C. § 112 for failing to disclose the best mode. "Violation of the best mode requirement is a question of fact, for it depends on the applicant's intent." *High Concrete Structures, Inc. v. New Enterprise Stone and Lime Co., Inc.,* 377 F.3d 1379, 1382 (Fed.Cir.2004). To comply with the law, a patent application "must set forth the best mode known to the inventor for practice of the invention claimed in the patent." *Id.* In order to prove invalidity under § 112, a challenger must demonstrate that: "(1) the inventor knew of a better mode than was disclosed, and (2) the inventor concealed that better mode." *Id.* (citing *Chemcast Corp. v. Arco Indus. Corp.,* 913 F.2d 923, 927–28 (Fed. Cir.1990)). The test is thus both objective and subjective. Again, a patent is presumed valid, and can only be proved invalid by clear and convincing evidence. *Id.*

Here, BaySaver and AccuBid, without stating the law and applying specific facts to the best mode claim, simply paste a portion of Lenhart's deposition testimony into their opposition brief in order to defeat summary judgment. (Def.'s Opp. Mem. at 15–17.) The apparent basis for the claim is that the patent inventors did not include specific parameters, including width, length, and depth, for some of the components taught by the '527 and '639 patents. (Def.'s Opp. Mem. at 17.) The deposition testimony, however, does not give rise to an inference that the patent inventors applied for a patent "while at the same time concealing from the public preferred embodiments of their inventions which they ha[d] in fact conceived." *High Concrete Structures, Inc.,* 377 F.3d at 1383 (quoting *Randomex, Inc. v. Scopus Corp.,* 849 F.2d 585, 588 (Fed.Cir.1988)). As Contech notes, BaySaver and AccuBid "have not even identified which patent or claims allegedly violate the best mode disclosure requirement." (PL's Reply Mem.

at 28.) Moreover, the Lenhart testimony does not demonstrate any subjective intent on the part of the inventors to intentionally conceal a better mode. Even if the undisclosed parameters were material, which is far from clear, "[t]he best mode requirement of § 112 is not violated by unintentional omission of information that would be readily known to persons in the field of the invention." *High Concrete Structures, Inc.,* 377 F.3d at 1383. Contech will therefore be granted summary judgment on the best mode claim.

BaySaver's and AccuBid's final patent claim asserts that the Contech patents are unenforceable due to inequitable conduct during the patent application process. This claim requires a showing, in effect, that Contech's patents were obtained by means of a fraud against the USPTO. *See Burlington Indus., Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422 (Fed.Cir. 1988). As the Federal Circuit has put it, "[i]nequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988). To establish the defense, the defendants must first make a threshold showing on both prongs, materiality and intent. *Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1318–19 (Fed.Cir. 2000). Once that showing is made, "the intent necessary to establish inequitable conduct is based on a sliding scale related to materiality of the omission." *Abbott Labs. v. Torpharm, Inc.,* 300 F.3d 1367, 1380 (Fed.Cir.2002). That is, the more material the misinformation, the less need there is to prove intent, and vice versa. Whether the threshold requirements of materiality and intent have been met has been described as a question of fact, *Halliburton Co. v. Schlumberger Tech. Corp.,*

925 F.2d 1435, 1439 (Fed.Cir.1991), but "[t]he defense of inequitable conduct is entirely equitable in nature, and thus not an issue for a jury to decide." *Perseptive Biosystems,* 225 F.3d at 1318.

The sole basis of BaySaver's and Accu-Bid's inequitable conduct counterclaim is a brief segment of testimony taken from the Lenhart deposition that, as offered by the defendants, raises a disclosure issue concerning U.S. Patent No. 4,643,836 ("the '836 patent' "). According to the defendants, the testimony demonstrates that the '836 patent might have been relevant to the application process of the '527 and '639 patents, but was never disclosed to the USPTO. (Def.'s Opp. Mem. at 17–18.) The testimony, however, reveals nothing about the relevance or materiality of the '836 patent and fails to raise even an inference of an intent to deceive or mislead the USPTO. (*See* Pl.'s Reply Mem. at 13–16, Lenhart Deposition Testimony.) Instead, Contech explains that the '836 patent was in fact brought to the attention of the USPTO, since it was specifically referenced on a product brochure listed in a prior art disclosure statement. (*See id.* at 14, Exhibit 4.) Although the '836 patent could have been more prominently cited in the disclosure statement, this fact alone does not demonstrate an intent to deceive. Additionally, Lenhart's testimony reveals that he had no knowledge of the '836 patent, and that it was instead his co-inventor, Knutson, who submitted the prior art brochure to the USPTO via their attorney. Moreover, BaySaver and Accu-Bid have made no showing that the '836 patent was even material to the prosecution of the '527 and '639 patents. Because BaySaver and AccuBid have failed to make a threshold showing on both the materiality and the intent prongs, especially under a clear and convincing standard, Contech is entitled to summary judgment on the inequitable conduct counterclaim.

### B. Business Tort Claims

BaySaver and AccuBid assert four business tort counterclaims, including defamation,[11] tortious interference with prospective business relationships,[12] tortious interference with contractual relationships,[13] and unfair competition.[14] The

---

**11.** "To recover for defamation under Maryland law, a plaintiff must establish that: (1) the defendant made a defamatory statement regarding the plaintiff to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff suffered harm thereby." *Southern Volkswagen, Inc. v. Centrix Fin'l, LLC,* 357 F.Supp.2d 837, 843 (D.Md.2005) (quoting *Holt v. Camus,* 128 F.Supp.2d 812, 815 (D.Md.1999)). "Indeed, if a plaintiff cannot prove the falsity of a particular statement, the statement will not support an action for defamation." *Spengler v. Sears, Roebuck & Co.,* 163 Md.App. 220, 878 A.2d 628, 640 (2005).

**12.** "Under Maryland law the following elements are necessary to state a claim under the tort of intentional interference with business relations: '(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such dam-

age and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and loss resulting.' " *Southern Volkswagen, Inc.,* 357 F.Supp.2d at 850–51 (quoting *Berlyn, Inc. v. Gazette Newspapers,* 223 F.Supp.2d 718, 741 (D.Md.2002)); *see also Alexander & Alexander Inc. v. Dixon Evander & Assoc., Inc.,* 336 Md. 635, 650 A.2d 260, 269 (Md.1994). As opposed to the tort of interference with a specific contract, this broader business tort "unquestionably requires more than purposeful interference," and allows a party to pursue a business advantage over a competitor in the marketplace, absent a showing of conduct that is independently wrongful or unlawful. *See Evander,* 650 A.2d at 269–71.

**13.** Recognizing a distinction between the broader tort of general interference with prospective business relations and interference with a specific contract, Maryland law allows an allegedly injured party to prove tortious

factual underpinning of all four tort claims asserted by BaySaver and AccuBid is a letter sent by Contech in February 2007, soon after the filing of this lawsuit, to a select group of potential customers and regulators notifying them of Contech's infringement claim against BaySaver's Bay-Filter product.[15] BaySaver and AccuBid allege that the letter was not intended to be informative, but rather was filed for the sole purpose of harassing the defendants and disrupting their business dealings. (Def.'s Opp. Mem. at 20–25.) BaySaver and AccuBid raised the same issue when seeking a TRO on February 28, 2007. The motion was denied primarily on the grounds that the court could not at that early stage of the litigation determine whether the infringement suit was objectively baseless. Now, following discovery, there is some evidence that Contech sent its letters in a targeted manner to BaySaver's prospective clients with the intent of disrupting potential business dealings. While some of this conduct may cross the line between fair competition and subjective bad faith, Contech is still entitled to summary judgment on the tort counterclaims for two reasons: (1) BaySaver and

AccuBid have failed to provide evidence that Contech's underlying suit was objectively baseless, and (2) BaySaver and AccuBid failed to provide sufficient evidence of causation and damages, at least until well after the close of discovery.

▮▮▮▮▮ This is not the first time an alleged infringer has challenged a notice of lawsuit letter sent by a competitor to the alleged infringer's potential customers alleging patent infringement and threatening retaliation. *See GP Indus., Inc. v. Eran Indus., Inc.,* 500 F.3d 1369, 1371 (Fed.Cir.2007) (alleged infringer sought a preliminary injunction to prevent competitor from issuing further communications to the alleged infringer's potential customers alleging product infringement and threatening legal action); *Globetrotter Software Inc. v. Elan Computer Group, Inc.* 362 F.3d 1367, 1368 (Fed.Cir.2004) (alleged infringer pursued various business tort claims, including tortious interference with prospective economic advantage and unfair competition, against competitor that had sent communications alleging patent infringement to a potential buyer of the alleged

interference with an existing contract if it can demonstrate that the accused party intentionally and improperly interfered with the performance of that specific contract. *See Evander,* 650 A.2d at 270; *K & K Mgmt., Inc. v. Lee,* 316 Md. 137, 557 A.2d 965, 973–74 (Md. 1989). The precise scope of this distinction need not be further explored for purposes of this opinion.

14. While the tort of unfair competition in Maryland "encourages fair trade in every way and aims to foster, and not to hamper, competition, no one, especially a trader, is justified in damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort ... What constitutes unfair competition in a given case is governed by its own particular facts and circumstances ... [with] the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or

deception." *Trimed, Inc. v. Sherwood Medical Company,* 977 F.2d 885, 891 (4th Cir.1992) (quoting *Balt. Bedding Corp. v. Moses,* 182 Md. 229, 34 A.2d 338, 342 (1943)).

15. BaySaver and AccuBid also point to a second letter published by Contech on October 16, 2007, which states in relevant part that "[i]n a recent ruling, the court dismissed Contech's claims without allowing Contech the opportunity to present the case at trial. As a result, Contech will be asking an appellate court specializing in patent law to review and overturn the lower court's decision." (Def.'s Opp. Mem. at 133.) Although the court more accurately granted summary judgment, rather than dismissing the claims, there is nothing patently false or overly inflammatory on the face of this letter. Therefore, the October letter does not change the analysis the court must perform in analyzing the business tort claims.

infringer); *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 893–94 (Fed.Cir.1998) (alleged infringer sought a preliminary injunction to prevent competitor from issuing further communications to customers alleging product infringement and recommending the customers stop using the allegedly infringing systems). In the context of publicizing a patent and communicating in the marketplace an intention to enforce a patent right, however, federal patent law preempts state-law tort liability. *See Globetrotter,* 362 F.3d at 1374–75. Under federal law, "a patentee has a right to inform potential infringers of a patent and potentially infringing activity unless the communication is made in bad faith." *GP Indus.,* 500 F.3d at 1374. Thus, when an alleged infringer asserts "state tort law claims based on assertions of patent infringement, even if it is not generally a required element of the state cause of action, there can be no liability unless" the alleged infringer can prove bad faith. *Plasmart, Inc. v. Wincell Int'l Inc.,* 442 F.Supp.2d 53, 57 (S.D.N.Y.2006) (citing *Globetrotter,* 362 F.3d at 1375–77). To demonstrate bad faith, an alleged infringer must be able to show both that the underlying infringement claim is objectively baseless and that it was asserted with subjective bad faith. *Globetrotter,* 362 F.3d at 1375–77. The "objectively baseless" standard has been defined in the infringement context as it was by the Supreme Court in an antitrust action to mean "no reasonable litigant could realistically expect success on the merits." *Id.* at 1376–77 (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993)). Moreover, in performing its analysis, a court should first determine whether an underlying suit is objectively baseless before considering the subjective intent prong

because "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." *Id.* at 1375–76 (quoting *Prof'l Real Estate Investors,* 508 U.S. at 57).

■ Here, as a preliminary matter, the underlying content of Contech's February letter does not appear to be untruthful or nearly as inflammatory or threatening as other infringement notice letters held to be protected under federal law. The February letter merely informs that "Contech filed a patent infringement suit against BaySaver, Inc. and AccuBid Excavation, Inc. charging BaySaver and AccuBid with infringement of certain Contech patents related to media filtration based upon the manufacture and sale of the BayFilter product. As with all patent infringement suits, the suit seeks to enforce Contech's right to prevent the unauthorized sale and/or use of products or processes that violate (infringe) its patents." (Def.'s TRO Mem. at Ex. F.) This language is less threatening than the content of communications in *GP Indus.,* which was still held to be protected, where the patentee alleged criminal misconduct and wrote to potential distributors that "it has been brought to our attention that your company is selling and offering for sale the [ ] products of GP Industries. Those products infringe Eran Industries' patent rights ... [T]his letter is intended to place you on notice that Eran Industries will consider naming your company as an additional defendant unless you ... forever cease selling or offering for sale those products." 500 F.3d at 1372. Thus, despite BaySaver's and AccuBid's attempt to depict the February letter as an overly threatening communication, it does not appear to be untruthful or to threaten potential customers as much as other protected letters have done. Because "[c]ommunication of accurate information about patent

rights, whether by direct notice to potential infringers or by publicity release, does not support a finding of bad faith," *Mikohn Gaming Corp.*, 165 F.3d at 898, BaySaver and AccuBid can only prevail on their state business tort counterclaims if they can demonstrate that the underlying infringement suit was objectively baseless.

BaySaver and AccuBid focus almost entirely on the subjective bad faith prong of the court's inquiry, and fail to offer evidence that establishes the underlying suit was objectively baseless. It is a difficult burden to show that "no reasonable litigant could realistically expect success on the merits," and BaySaver and AccuBid offer little to overcome that hurdle. Although the court granted BaySaver and AccuBid summary judgment on the infringement claim, the court had to first perform a claim construction on the '527 and '639 patents. While the construction offered by BaySaver and AccuBid was found to be far more plausible than that offered by Contech, Contech's position was not so poorly formulated or supported as to raise an inference that the infringement suit was a pure sham. Contech offered as support the expert opinion of former USPTO Chief Administrative Patent Judge, Bruce H. Stoner, and highlighted some apparent similarities between the BayFilter product and the Contech patents. Furthermore, this court did note during the TRO hearing that it was too early to determine by clear and convincing evidence that the suit was objectively baseless and subjectively brought in bad faith. While that determination concededly was made prior to discovery, BaySaver and AccuBid have not supported their objective baselessness argument with additional evidence. *Cf. GP Indus.*, 500 F.3d at 1375 (finding that a district court's determination during a preliminary injunction hearing that the validity of the patent is a close question precludes the infringement suit from being deemed objectively baseless).

The evidence of subjective bad faith that BaySaver and AccuBid offer on the timing, number, and target of the Contech letters, while troubling, is simply insufficient to establish that the underlying suit was objectively baseless. *See Mikohn Gaming Corp.*, 165 F.3d at 897 (noting that "a competitive commercial purpose is not of itself improper"). The Federal Circuit has held that "a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." *Id.* (internal quotation omitted). Because BaySaver and AccuBid have failed to demonstrate that Contech's underlying infringement suit was objectively baseless, despite some evidence of subjective bad faith, they are precluded from prevailing on their state business tort counterclaims.

■ As a final matter, Contech is further entitled to summary judgment on the business tort claims for the defendants' failure to demonstrate causation and damages. As previously discussed, BaySaver and AccuBid initially refused to disclose the identity of the customer(s) whose contracts were allegedly lost as a direct result of Contech's letters. It was not until November 12, 2007, nearly two months after the close of discovery, when BaySaver and AccuBid offered the full identity of a lost customer, Archstone. (*See* Def.'s Supp. Opp. Mem. at 2–3.) Moreover, even this late filing fails to indicate the nature of the testimony that could be expected from Mr. Volvomalakis, a representative of Archstone. BaySaver and AccuBid did not include an affidavit from Volvomalakis, and instead rely on Pank's counsel's proffer as to what he might say. In addition to being untimely, the late submission is simply inadequate to support causation and damages on the business tort counterclaims.

For all the above reasons, Contech is entitled to summary judgment on all counterclaims. A separate order follows.

### ORDER

For the reasons stated in the accompanying memorandum, IT IS this 15th day of January, 2008, hereby **ORDERED** that:

1. Contech's Motion for Summary Judgment on the defendants' counterclaims (docket entry no. 58) **IS GRANTED;**

2. Contech's Motion to Compel Discovery and Exclude Expert Testimony (docket entry no. 46) **IS DENIED AS MOOT;**

3. Defendants' Cross Motion for an Award of Fees associated with the Motion to Compel Discovery (docket entry no. 47) **IS DENIED;** and

4. The clerk shall **CLOSE** this case.