**180S, INC., et al., Plaintiffs,**

v.

**GORDINI U.S.A., INC., Defendant.**

**Civil No. JFM 08–0177.**

United States District Court,
D. Maryland.

March 10, 2009.

Douglas P. Lobel, Heather Ann Faltin, John Adam Suppes, Jonathan G. Graves, Cooley Godward Kronish LLP, Reston, VA, for Plaintiffs.

Patrick R. Buckler, Spence and Buckler PC, Towson, MD, Allison Marie Williams, Richard P. Beem, Beem Patent Law Firm, Ethan F. Hayward, Robert H. Smeltzer, Lowis and Gellen LLP, Chicago, IL, for Defendant.

## MEMORANDUM

J. FREDERICK MOTZ, District Judge.

Plaintiffs 180s, Inc. and 180s, LLC (collectively "180s") bring suit for patent and trade dress infringement against Defendant Gordini U.S.A., Inc. ("Gordini"). Gordini asserts three counterclaims, two of which 180s has moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. 180s seeks to dismiss Gordini's counterclaims alleging intentional interference with contract and intentional interference with prospective economic advantage.[1] (Pls.' Mot. to Dismiss 1.)

The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6 (D.Md. 2008). For the reasons stated below, 180s' motion to dismiss is granted as to Gordini's second counterclaim and denied as to the third.

## I.

180s is "a Baltimore-based maker of performance wear founded by two University of Pennsylvania Wharton Business School students who invented and patented the first-of-its-kind wrap-behind-the-head ear warmer." (Pls.' Mem. Supp. Mot. to Dismiss Counterclaims ("Pls.' Mem.") at 2.) 180s alleges that its successful invention has been followed by a flood of knockoff ear warmers, against which 180s has been vigorous in enforcing its intellectual property rights. (Id.) In this case, 180s alleges patent and trade dress infringement on the basis of Gordini's manufacture, use, and sale of a behind-the-head ear warmer sold under the name "Lobz®." The parties do not dispute that Maryland law applies to Gordini's counterclaims.

## II.

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim upon motion of the opposing party for failure to state a claim upon which relief may be granted. The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). The court must assume that the facts alleged in the complaint are true and draw all reasonable factual inferences in the nonmoving party's favor. *Burbach Broad. Co. v. Elkins Radio Corp.,* 278 F.3d 401, 405 (4th Cir.2002). "Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." *O'Ryan v. Dehler Mfg. Co.,* 99 F.Supp.2d

---

1. The first counterclaim, which 180s does not seek to dismiss, requests declaratory relief as to the patents and trade dress claims asserted by 180s. (Def.'s Answer, Affirmative Defenses, and Counterclaims ("Def.'s Counterclaims") at 13.)

714, 717–18 (E.D.Va.2000) (*citing Zeran v. America Online, Inc.,* 129 F.3d 327, 329 (4th Cir.1997)). A complaint need not assert detailed factual allegations, but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.*

## III.

■■■ 180s has moved to dismiss Gordini's counterclaim of intentional interference with contract on the ground that Gordini has failed to allege any breach of contract. (Pls.' Mem. 4.) In Maryland, the five elements of intentional interference with contract are: "1) existence of a contract between plaintiff and a third party; 2) defendant's knowledge of that contract; 3) defendant's intentional interference with that contract; 4) breach of that contract by the third party; 5) resulting damages to the plaintiff." *Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons,* 358 F.Supp.2d 475, 479 (D.Md.2005) (*quoting Fraidin v. Weitzman,* 93 Md.App. 168, 611 A.2d 1046, 1057 (1993)).

Gordini alleges in the counterclaim that 180s "pressur[ed] one or more retailers not to buy Lobz® ear warmers by falsely suggesting that Lobz® ear warmers infringe on 180s patents and trade dress and/or by suggesting that the retailers themselves may be liable for patent infringement if they sell Lobz®." (Def.'s Counterclaims 14.) Gordini asserts that as a result of 180s' alleged threats, "one or more retailers have foregone additional orders of Lobz® ear warmers." (*Id.*) 180s notes, however, that Gordini never alleges that any of these foregone additional orders

involved the breach of a contract. (Pl.'s Mem. 3.)

Gordini concedes that it "has not specifically pled that Plaintiffs' conduct induced one or more of Gordini's customers to breach their contracts, which would ordinarily be an element of a breach of contract claim." (Def.'s Response to Pls.' Mot. to Dismiss ("Def.'s Response") at 1–2.) Gordini therefore does not oppose the dismissal of this counterclaim, but instead "affirmatively seeks leave to withdraw it, subject to its right to seek leave to amend to include such a count should the evidence adduced in discovery demonstrate a contractual breach." (*Id.* 2.)

180s contends that I should dismiss this counterclaim with prejudice on the basis of Gordini's bad faith in submitting and subsequently acquiescing to withdrawal of this baseless pleading. (Pls.' Reply Mem. Supp. Mot. to Dismiss Counterclaims ("Pls.' Reply") at 5.) 180s states that Gordini had no good-faith basis for bringing the claim because, as Gordini has conceded, it had no basis for alleging 180s' conduct caused any third party to breach a contract with Gordini, which is a required element of the claim. (*Id.*) 180s also alleges that Gordini previously submitted a meritless motion to dismiss or transfer and only withdrew the motion after 180s "incur[red] expenses for briefing that was unnecessary." (*Id.*) In light of what 180s views as repeated baseless pleading by Gordini, 180s therefore seeks denial of Gordini's request for an opportunity to later amend the answer to include the second counterclaim, as well as sanctions such as the recovery of the costs incurred by 180s in connection with the instant motion to dismiss. (*Id.*)

The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court. *Carter v. Norfolk Cmty. Hosp.*

*Ass'n,* 761 F.2d 970, 974 (4th Cir.1985). Given the presumably minimal time spent and expense incurred by 180s as a result of Gordini's inadequate pleading, the absence of clear bad faith, and the policy of the Federal Rules in favor of allowing the amending of pleadings, *see* Fed.R.Civ.P. 15(a), I will dismiss Gordini's counterclaim of intentional interference with contracts without prejudice.

## IV.

■■■ 180s has also moved to dismiss Gordini's counterclaim of intentional interference with prospective economic advantage. To state such a claim, Gordini must allege: "1) intentional and willful acts; 2) calculated to cause damage to [Gordini] in [its] lawful business; 3) done with an unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and 4) actual damage and loss resulting."[2] *Audio Visual Assoc., Inc. v. Sharp Electronics Corp.,* 210 F.3d 254, 261 (4th Cir.2000) (*citing Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.,* 336 Md. 635, 650 A.2d 260, 269 (1994)). "As opposed to the tort of interference with a specific contract, this broader business tort unquestionably requires more than purposeful interference, and allows a party to pursue a business advantage over a competitor in the marketplace, absent a showing of conduct that is independently wrongful or unlawful." *Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.,* 534 F.Supp.2d 616,

630 (D.Md.2008) (internal quotations omitted).

■■■ Gordini's third counterclaim incorporates by reference the allegations of the second counterclaim that:

> 180s has willfully, tortiously, wrongfully and without justification interfered with Gordini's contracts by pressuring one or more retailers not to buy Lobz® ear warmers by falsely suggesting that Lobz® ear warmers infringe on 180s patents and trade dress and/or by suggesting that the retailers themselves may be liable for patent infringement if they sell Lobz®.

(Def.'s Counterclaims 14.) Gordini alleges damages "as a direct and proximate result of 180s' . . . wrongful interference . . . in that one or more retailers have foregone additional orders of Lobz® ear warmers on the basis of [180s'] threats." (*Id.*)

180s raises two challenges to Gordini's third counterclaim. First, 180s claims that Gordini has failed to allege the required element of unlawful or improper purpose. (Pls.' Mem. 5). 180s contends that even if its statements to Gordini's retailers that Gordini's product infringed 180s' patents were false, such statements alone would be insufficient to satisfy the third required element of this tort "because there is no allegation that 180s made the statements with a malicious intent to harm Gordini's business unjustifiably." (*Id.* 6.)

At this stage of the litigation, I must draw all reasonable inferences in favor of Gordini, *Burbach,* 278 F.3d at 405, and

**2.** The Federal Circuit has "held that federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367, 1374 (Fed.Cir. 2004). Therefore, to avoid preemption of this state tort claim, Gordini will ultimately have

to prove that 180s acted in bad faith in asserting its claim of patent infringement. "To demonstrate bad faith, an alleged infringer must be able to show both that the underlying infringement claim is objectively baseless and that it was asserted with subjective bad faith." *Contech Stormwater Solutions, Inc.,* 534 F.Supp.2d at 631 (*citing Globetrotter,* 362 F.3d at 1375–77).

must determine merely whether the claim has been adequately pled. In light of the liberal pleading rules, I find that the allegations made in Gordini's third counterclaim are sufficient to survive 180s' motion to dismiss. In *Alexander & Alexander*, the Maryland Court of Appeals discussed the types of unlawful or malicious conduct encompassed by this tort: "Wrongful or unlawful acts include common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." 650 A.2d at 271. Gordini has alleged injurious falsehood in its claim that 180s made willful, tortious, wrongful, and unjustified false statements to retailers. (Def.'s Counterclaims 14.) Such willful false statements would be sufficient to constitute an improper purpose. Additionally, Gordini's allegation that 180s "suggest[ed] that the retailers themselves may be liable for patent infringement if they sell Lobz®" may be construed as a threat of groundless civil suits. (*Id.*) I find that the third element of Gordini's third counterclaim is therefore adequately pled.

 180s' second argument in support of its motion to dismiss this counterclaim is that the statements allegedly made by 180s are protected by the *Noerr–Pennington* doctrine, which provides immunity from liability for exercising one's First Amendment right to petition the government or the courts. *Baltimore Scrap Corp. v. David Joseph*, 81 F.Supp.2d 602, 612 (D.Md.2000), *aff'd*, 237 F.3d 394 (4th Cir.2001). This doctrine originated in the antitrust context, *see United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), but has now been expanded to include, *inter alia*, claims of tortious interference. *See, e.g., Havoco of America, Ltd. v. Hollobow*, 702 F.2d 643, 649 (7th Cir.1983); *Virtual Works, Inc. v. Network Solutions, Inc.*, No. CRIM. A. 99–1289–A, 1999 WL 1074122 (E.D.Va. Nov. 23, 1999) (unpublished).

180s states that "Gordini's tort claim [of intentional interference with prospective economic advantage] appears to be based on nothing more than the mere repetition by 180s representatives of the position set forth in 180s' publicly-filed Complaint in this case." (Pls.' Reply 2.) 180s argues that because the *Noerr–Pennington* protections have been applied to pre-litigation communications, including warnings of potential litigation and efforts to compromise the dispute, *see Globetrotter Software Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1376 (Fed.Cir.2004), the same immunity should be applied "by extension" to "statements by a party that merely repeat its stated position in the lawsuit." (Pls.' Reply 3.) This doctrine could be used to protect communications related to the good faith filing of 180s' infringement lawsuit against Gordini, and potentially even truthful communications made by 180s to Gordini's customers that Gordini may be infringing 180s' patents. *See Melea Ltd. v. Quality Models Ltd.*, 345 F.Supp.2d 743, 757 (E.D.Mich., 2004).[3] However, Gordini

---

**3.** 180s relies heavily on *Melea* in its *Noerr–Pennington* argument. While the facts of *Melea*, a patent infringement case, are somewhat similar to those of the present case, *Melea* is not controlling here. In *Melea*, the defendant's counterclaim for intentional interference with business relations was based on letters sent by the plaintiff to the defendant's customers alerting them that several of their automotive components "appear to exhibit characteristics consistent" with the plaintiff's patent. 345 F.Supp.2d at 757. The court

also alleges that 180s, through their false statements, willfully and wrongfully pressured retailers not to buy Gordini's product. (Def.'s Counterclaim 14.)

Assuming, for the purposes of this motion, that Gordini's allegations are true, the false statements made by 180s about Gordini's products to retailers separate and apart from bringing the lawsuit against Gordini "are not the type of petitioning activity protected by the *Noerr–Pennington* doctrine." *Black & Decker Inc. v. Pro–Tech Power Inc.*, No. 97–1123–A, 1997 U.S. LEXIS 23999, at *10–11 (E.D.Va. Dec. 23, 1997) (unpublished). In *Black & Decker*, Pro–Tech claimed that Black & Decker's allegations to retailers were knowingly false. *Id.* at *4. The court reasoned that these allegations that Pro–Tech's product infringed on Black & Decker's trademark rights "do not have to do with the fact that Black & Decker filed a lawsuit against Pro–Tech, but rather they amount to a claim that Black & Decker made false statements about Pro–Tech's [product] to customers of Pro–Tech." *Id.* Only activity that "is really a part of the litigation process," such as Black & Decker's subpoena of third-party distributors of Pro–Tech products accompanied by a cover letter describing the litigation, is "potentially protected by the *Noerr–Pennington* doctrine." *Id.* at *10. The conduct alleged by Gordini is not the type of First Amendment activity protected by the *Noerr–Pennington* doctrine.

Gordini's allegations in its third counterclaim are sufficient to state a claim of tortious interference with prospective economic advantage. 180s motion to dismiss this counterclaim is therefore denied.

A separate order effecting the rulings made in this opinion is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herewith, it is, this 10th day of March 2009

ORDERED

1. Plaintiff's motion to dismiss counterclaims is granted in part and denied in part;

2. Count II of the counterclaim is dismissed without prejudice; and

3. Count III of the counterclaim is *not* dismissed.

---

dismissed the counterclaim because the defendant failed to offer any evidence that "this, or any other statement contained in Plaintiffs' letter, is untrue." *Id.* A significant difference between the present case and *Melea* is that the record in *Melea* contained copies of the plaintiff's letters, *id.* at 756, whereas documentation of 180s' alleged communication with Gordini's customers has not yet been introduced. As the court noted, "if 'matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56.'" *Id.* (*quoting* Fed.R.Civ.P. 12(b)). In the present case, unlike in *Melea*, Gordini currently need only allege, rather than be able to prove, that 180s knowingly made false statements to Gordini's customers.