# United States Court of Appeals for the Federal Circuit

2007-1087

GP INDUSTRIES, INC.,

Plaintiff-Appellee,

and

A GUTTER SOLUTION, LLC, CENTRAL ALUMINUM SUPPLY CORPORATION,
EXOVATIONS OF ATLANTA, LLC, FIRST CHOICE GUTTERS AND SIDING, INC.,
GENERAL STAMPING, INC., GUTTERS FOR LESS, INCORPORATED,
GUTTER DEFENDER, INC. (doing business as Gutter Protectors),
GUTTERSDIRECT.COM, LLC, LAKESIDE GUTTER PRODUCTS, INC.,
SCOTT KATZ (doing business as CKC Cleaning Specialists),
OMAHA GUTTER & SIDING COMPANY, SELA ROOFING AND REMODELING, INC.,
JAMES L. SIPES, SPECIALTY TOOL AND MACHINE, INC., DANIEL STAVA,
GREGORY M. STAVA, SUL-CO, INC. (doing business as Polar Products),
DOYLE J. SULLIVAN, ROONE UNGER, WW DISTRIBUTORS, LLC,
LANCE D. BAILEY, RANDALL R. BAILEY, BRIAN M. BECK,
DAVID R. HERDRICH, and JOSHUA HESSE,

Third-Party Defendants-Appellees,

and

MARK HURD,

Third-Party Defendant,

v.

ERAN INDUSTRIES, INC. and JAMES E. BACHMAN,

Defendants/Third-Party Plaintiffs-
Appellants.

Todd E. Zenger, Kirton & McConkie, of Salt Lake City, Utah, argued for plaintiff-appellee and third-party defendants-appellees.

Michael B. Hurd, Hovey Williams LLP, of Kansas City, Missouri, argued for defendants/third-party plaintiffs-appellants. With him on the brief was Jill D. Singer.

Appealed from: United States District Court for the District of Nebraska

Chief Judge Joseph F. Bataillon

# United States Court of Appeals for the Federal Circuit

2007-1087

GP INDUSTRIES, INC.,

Plaintiff-Appellee,

and

A GUTTER SOLUTION, LLC, CENTRAL ALUMINUM SUPPLY CORPORATION,
EXOVATIONS OF ATLANTA, LLC, FIRST CHOICE GUTTERS AND SIDING, INC.,
GENERAL STAMPING, INC., GUTTERS FOR LESS, INCORPORATED,
GUTTER DEFENDER, INC. (doing business as Gutter Protectors),
GUTTERSDIRECT.COM, LLC, LAKESIDE GUTTER PRODUCTS, INC.,
SCOTT KATZ (doing business as CKC Cleaning Specialists),
OMAHA GUTTER & SIDING COMPANY, SELA ROOFING AND REMODELING, INC.,
JAMES L. SIPES, SPECIALTY TOOL AND MACHINE, INC., DANIEL STAVA,
GREGORY M. STAVA, SUL-CO, INC. (doing business as Polar Products),
DOYLE J. SULLIVAN, ROONE UNGER, WW DISTRIBUTORS, LLC,
LANCE D. BAILEY, RANDALL R. BAILEY, BRIAN M. BECK,
DAVID R. HERDRICH, and JOSHUA HESSE,

Third-Party Defendants-Appellees,

and

MARK HURD,

Third-Party Defendant,

v.

ERAN INDUSTRIES, INC. and JAMES E. BACHMAN,

Defendants/Third-Party Plaintiffs-
Appellants.

_____

DECIDED:  September 20, 2007

_____

Before NEWMAN, LOURIE, and PROST, Circuit Judges.

LOURIE, Circuit Judge.

Eran Industries, Inc. ("Eran") appeals from the decision of the United States District Court for the District of Nebraska granting GP Industries, Inc.'s ("GPI's") motion for a preliminary injunction enjoining Eran from future correspondence with present and potential customers. GP Indus. v. Eran Indus., No. 08:06-CV-50 (D. Neb. Nov. 8, 2006) (Preliminary Injunction Order). Because we determine that the court abused its discretion in granting the preliminary injunction, we reverse.

BACKGROUND

Eran is the assignee of U.S. Patent 5,557,891 ("the '891 patent") directed to a rain gutter cover. GPI is a company that develops and markets gutter covers and was formed by former employees of Eran who were terminated in May and August of 2005. On January 31, 2006, Eran, through counsel, sent letters to its distributors and contractors informing them that GPI planned to manufacture and sell a gutter cover that infringed the '891 patent ("the January letter"). The letter stated in pertinent part:

> It has come to our attention that GP Industries is planning to manufacture and sell a gutter cover that is similar to our client's proprietary gutter cover designs. . . . We obtained a sample of GP Industries' gutter cover and believe that it infringes at least our client's '891 patent and possibly other Eran patents. . . . Eran has spent a considerable amount of time and money developing and protecting its proprietary gutter cover designs and will take all necessary steps to stop the infringement by GP Industries and anyone who purchases infringing gutter cover products from GP Industries. Eran plans to focus its enforcement efforts against GP Industries and currently has no plans to sue any distributors or customers who cooperate with its efforts to stop GP Industries' infringement.

On February 7, 2006, GPI filed an action in the United States District Court for the District of Nebraska for a declaratory judgment of noninfringement, invalidity, and

unenforceability of the '891 patent, and also alleged tortious interference with business relationships, and violations of the Nebraska Deceptive Trade Practices Act. The next day, Eran filed suit against GPI for infringement of the '891 patent and misappropriation of a trade secret. The district court consolidated the actions for discovery and trial.

On March 31, 2006, GPI filed a motion for a preliminary injunction enjoining Eran from: "(1) seeking to prevent GPI from making and selling its gutter products during the pendency of this litigation and (2) making vague and unspecified allegations of infringement against GPI in the marketplace." On May 10, 2006, Eran sent a second letter to its distributors and contractors informing them that GPI's products were based on a misappropriated trade secret design ("the May letter"). The May letter stated in pertinent part:

> It has been brought to our attention that your company is selling and offering for sale the Leaf-X and/or Leafree products of GP Industries. Those products infringe Eran Industries' patent rights and are based on a trade secret drawing of a product design that was unlawfully stolen from Eran Industries. . . . The theft of Eran Industries' trade secrets and the distribution and sale of the Leaf-X and Leafree products that incorporate those trade secrets constitute mail fraud, interstate transportation of stolen property, and other criminal activity. In addition, those unlawful activities constitute a pattern of racketeering activity that is a violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act. . . . [T]his letter is intended to place you on notice that Eran Industries will consider naming your company as an additional defendant unless you either demonstrate that your company is not selling or offering for sale the Leaf-X and Leafree products or agrees to promptly forever cease selling or offering for sale those products.

The district court issued an order dated November 8, 2006 granting GPI's motion for a preliminary injunction. The court stated that the only issue before it "is whether the court enjoins Eran's communications to present and potential customers" and noted that there were two letters at issue, the January and May letters. <u>Preliminary Injunction</u>

Order, slip op. at 8. Recognizing that the patent laws require a finding of bad faith before a court can prevent a patentee from communicating its patent rights to a potential infringer, the court found that "Eran's activities approach the bad-faith threshold." Id. The court reasoned that there had been no showing that Eran's president examined any product sold or distributed by GPI or made an effort to verify that the prototype it obtained was the product GPI sold. The court also noted that the letters sent by Eran "are particularly scurrilous, accusatory and threatening." Id. The court further stated that the "timing of the action vis-à-vis the termination of the former employees invites an inference of retaliatory motive." Id. at 9. The court also found significant "that Eran never asserted a patent infringement claim against the manufacturers of other similar gutter covers." Id. The court concluded that "under the circumstances, the court finds that Eran's accusations were made in disregard of the truth or falsity of the purported infringement." Id.

The district court next considered the Eighth Circuit's factors required for injunctive relief. The court first found that "GPI has shown a threat of irreparable harm in connection with continued correspondence." Preliminary Injunction Order, slip op. at 9. The court next stated that "Eran will have an adequate remedy in damages if it succeeds on its patent claim. It can recoup any royalties under its patent and can recover damages for other breaches if proven. The balancing of these harms favors GPI." Id. The court noted that with regard to probability of success on the merits, the "court finds that the validity of Eran's patent presents a close question." Id. Finally, the court found that "although the public interest favors enforcing a valid patent, there is a substantial question as to validity." Id. The court stated that "[a]t this stage of the

proceedings, it cannot be said that either one side or the other will prevail on the ultimate issues." Id.

The district court entered the following injunction: "Eran Industries and James Buchanan are ordered to refrain from communicating information such as that contained in its January 31, 2006 and May 10, 2006, correspondence to its customers, distributors, contractors and others during the pendency of this litigation." Id.

Eran timely appealed, and we have jurisdiction pursuant to 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1).

## DISCUSSION

A party seeking an injunction must show: (1) a reasonable likelihood of success on the merits; (2) irreparable harm; (3) a balance of hardships in its favor; and (4) a public interest in favor of the injunction. Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d 1325, 1329 (Fed. Cir. 2000). The United States Court of Appeals for the Eighth Circuit applies a similar test. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc). The grant of a preliminary injunction is reviewed for "an abuse of discretion or misplaced reliance on an erroneous legal principle." Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Serv., 444 F.3d 991, 994 (8th Cir. 2006) (internal citation omitted). That deferential standard permits us to reverse the district court only if, "after a thorough review of the record, the proof unmistakably establishes a clear error or an abuse of discretion." Id. (internal citation omitted). When a patentee is prevented from communicating its patent rights, "[w]e apply federal patent law and precedent relating to the giving of notice of patent rights, in reviewing the grant of an injunction against the giving of such notice. . . . The grant of the preliminary injunction,

2007-1087                                           5

then, is reviewed in the context of whether, under applicable federal law, the notice of patent rights was properly given." Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 898 (Fed. Cir. 1998). We have further held that "federal law requires a showing of bad faith in order to bar such communications." Id.

On appeal, Eran argues that the district court failed to apply the correct legal standard for bad faith because the court failed to consider whether Eran's assertions were objectively baseless. According to Eran, in Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1375 (Fed. Cir. 2004), we stated that the bad faith standard cannot be satisfied absent a showing that the patentee's assertions were objectively baseless. Eran contends that the court only considered whether Eran's assertions were subjectively made in bad faith. Eran further asserts that GPI would not suffer irreparable harm absent the injunction and that the balance of hardships favors Eran because GPI can target Eran's customers without Eran being able to respond. Thus, Eran contends that the court erred in granting the injunction. Finally, Eran contends that the injunction is overly broad because it prevents "all communications" with a potential infringer.

GPI responds that the district court applied the correct legal standard for evaluating bad faith because the court found Eran's accusations were made in disregard of the truth. Moreover, GPI responds that none of the evidence demonstrates that Eran's president examined GPI's product before sending the threatening letters. GPI further asserts that the court correctly found that GPI satisfied its burden of showing a likelihood of success on its invalidity and noninfringement claims. Finally, GPI points out that the court found the letters to be "scurrilous" and that such letters irreparably

harmed GPI's business opportunities, relationships with customers, good will, and reputation.

First, we wish to note the rarity of an injunction being granted against communicating with others concerning one's patent rights. This is not a grant or denial of an injunction against infringement, but an injunction against communication, a much more serious matter. One has a right to inform others of his or her patent rights. See 35 U.S.C. § 287. Thus, an injunction against communication is strong medicine that must be used with care and only in exceptional circumstances.

In this case we agree with Eran that the district court abused its discretion in granting the preliminary injunction against Eran's communicating with customers and potential customers about its patent rights. While we recognize that a district court's discretion to enter a preliminary injunction is entitled to a high standard of deference, the patent laws permit a patentee to inform a potential infringer of the existence of its patent. See, e.g., 35 U.S.C. § 287 (authorizing a patentee to "give notice to the public" of a patent); Virtue v. Creamery Package Mfg. Co., 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts."); Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction.").

GPI's claim for tortious interference with business relationships is based on the letters sent to Eran's distributors and customers, wherein Eran gave notice of its patent

rights and its intent to enforce them. Federal patent law governs the propriety of giving such notice, and a patentee has a right to inform potential infringers of a patent and potentially infringing activity unless the communication is made in bad faith. See Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1336 (Fed. Cir. 1998) ("[F]ederal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith."). "Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." Mikohn Gaming, 165 F.3d at 897 (internal citation omitted). Mikohn Gaming involved similar facts in which a potential infringer sought an injunction to enjoin the patentee from communicating the existence of its patent rights to its customers. Id. at 894. The potential infringer had filed an action for a declaratory judgment against the patentee, alleging tortious interference with business relationships based on the letters. The district court granted the preliminary injunction, but we did not uphold the grant of that injunction, stating that the "record provided shows no more than a negligible likelihood of success in showing bad faith in [the patentee's] giving of notice by letters and publicity release." Mikohn Gaming, 165 F.3d at 898.

In Mikohn Gaming, we stated that "bad faith" may include subjective and objective considerations. Id. at 897. We have recently determined that a bad faith standard cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless. Globetrotter Software, 362 F.3d at 1375. The Supreme Court elaborated on the meaning of "objectively baseless," explaining that "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect

success on the merits." Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 608 U.S. 49, 60 (1993). Although the Professional Real Estate case involved an antitrust action, we have expressly applied the "objectively baseless" standard to a situation in which "the party challenged statements made in cease-and-desist letters by a patentee asserting its patent rights." Globetrotter Software, 362 F.3d at 1377. We stated that a "plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless." Id.

Thus, as part of the district court's analysis in deciding whether to grant a preliminary injunction that would prevent Eran from communicating its patent rights to a potential infringer, the court should have considered whether Eran's assertions were objectively baseless. The court did not cite the Professional Real Estate "objectively baseless" standard in its discussion of the relevant law or analysis. In fact, the court made certain statements in its opinion that nonetheless demonstrate that Eran's assertions were not objectively baseless. The court stated that "[a]t this stage of the proceedings, it cannot be said that either one side or the other will prevail on the ultimate issues." Preliminary Injunction Order, slip op. at 10. The court further stated that "the validity of Eran's patent presents a close question." Id. at 9. By recognizing that the patent is not necessarily invalid and that the court could not conclude that there was no infringement, the court established that Eran's assertions were not objectively baseless. In fact, the court only stated that the letters "approach the bad-faith threshold," clearly implying that they did not meet the bad faith standard. Thus, GPI could not show a reasonable likelihood of success that Eran's assertions were

objectively baseless. As we held in Globetrotters, because GPI cannot show that Eran's assertions were objectively baseless, the bad faith standard cannot be satisfied, and the court therefore erred in enjoining Eran from giving notice of its patent rights to potential infringers.

The district court, as indicated, did state that Eran's communications "approach the bad-faith threshold" and stated that "Eran's accusations were made in disregard of the truth or falsity of the purported infringement." Preliminary Injunction Order, slip op. at 8-9. However, the court's analysis of bad faith encompassed subjective considerations and unconvincing objective factors. Subjective considerations of bad faith are irrelevant if the assertions are not objectively baseless. See Professional Real Estate, 508 U.S. at 60 ("Only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.") For example, the court found that Eran did not show that its president examined any product sold or distributed by GPI and failed to verify that the prototype it did examine was the actual product sold. The court also stated that Eran did not "show that any expert advice or opinions were sought before Eran made the accusations of infringement" and found significant "that Eran never asserted a patent infringement claim against the manufacturers of other similar gutter covers." These are not convincing objective factors, as the president of a company does not necessarily need to examine an accused product or seek expert advice on a product as uncomplicated as a gutter cover. Furthermore, the court stated that the letters sent by Eran were "particularly scurrilous, accusatory and threatening" and "the timing of the action vis-à-vis the termination of the former employees invites an

inference of retaliatory motive." We do not consider the letters to be scurrilous. Moreover, one is entitled to threaten suit if not in bad faith and not objectively baseless.

In sum, even though the court did not consider the objectively baseless standard in its discussion of bad faith, the additional statements made in the opinion indicate that Eran's assertions were not objectively baseless; the grant of the preliminary injunction was therefore improper.

## CONCLUSION

For the foregoing reasons, we reverse the district court's entry of the injunction that enjoins Eran from future correspondence with present and potential customers.

<u>REVERSED</u>